Exhibit 1, Declaration of Kent McAllister

# **DECLARATION OF KENTON J. MCALLISTER**

I declare under penalty of perjury that the proceeding statements are true and correct. My name is Kenton J. McAllister. My birthdate is April 18, 1969. My mailing address is 223 Park Rd. 38 Sealy, Texas, 77474.

1. I purchased property located in the Town of San Felipe with a rural address of 223 Park Rd. 38, Sealy, Texas 77474 in March of 2006. My deed, survey and metes and bounds outline the property purchase transaction with Lawrence and Louise Brenner as general partners for the Brenner Family Limited Partnership, who sold the land to me. *See* Exhibit 3 & 4. I have a drone photo showing the neighboring properties as well as other land photos and documents. *See* Exhibit 4. One of my neighbors, Adrian Blakey, born April 2, 1952, attests that the property has been fenced his entire life. *See* Exhibit 16.

2. The property purchase was one sales transaction and two methods of financing. The deeds, single survey, metes and bounds and title insurance were based on the owner finance of a larger aggregate of 12.666 acres and the conventional-financed transaction of 2.620 acres. The sale contract with Mr. Brenner was for 15.286 acres. Additional contiguous property with paper roads was purchased in 2015. *See* Exhibit 3 & 4.

3. I believe I own all 21 acres of my fenced property. The original two deeds describe the property as 2.620 acres total and 12.666 acres (9.209 acres in lots and 3.46 acres in road) for a total of 15.286 acres out of the Old Town of San Felipe, Austin County, Texas, (platted in 1823) and being more particularly described in Exhibit "A" attached hereto and made a part hereof for all intents and purposes. This conveyance is made an accepted SUBJECT TO the following: 1. Fourth Street, Third Street and Baron De Bastrop Street as shown on survey plat dated May 26, 2005, by Frank Surveying Co., Inc." *See* Exhibit 3. The legal description of the land in Schedule A of my title policy reads "All that certain tract or parcel land lying and being situated in Austin County, Texas, and described as follows, to-wit: Lots numbered 142-144, 181-183, and part of THIRD STREET AND BARON DE BASTROP STREET . . ." *See id.*

4. After looking at the chain of title, the roads for the 15.286 acres have always been included in the conveyance. *See id.* Due to my understanding during the time of the contract, and the title policy, I believe the intent was to convey these appurtenances to me. In the alternative, if the roads were not conveyed to me, the Town has abandoned all the roads, and they belong to me. Also, I have been paying taxes on the roads since 2006 and the property has always been enclosed. *See id.* I obtained a quitclaim deed from the Brenner Family Limited Partnership on December 6th, 2023, for the entire closed property. *See* Exhibit 17. I alone have been paying taxes on the property since 2006 and not the Brenner Family Limited Partnership.

5. The chain of title extends back to 1836 for the 15.286 original acres purchased, plus additional purchases of a contiguous 2.547-acre tract from Larry and Caroll Hodo along with a contiguous 1.28-acre tract from Eiko Hill. Each of these properties contained colonial roads within the fence line also. *See* Exhibit 3 & 4.

Exhibit 1, Declaration of Kent McAllister

6.  Before I was on the Town of San Felipe's Council and during the election it quickly became clear that the Town Secretary Sue Foley, subordinate of Mayor Bobby Byars, did not want Cynthia Kelly or myself on Council. The election poll watchers complained of aggressive and negative behavior from the Town Secretary. *See* Exhibit 14.

7.  Before 2018, my property was two accounts. On January 8, 2018, I received a notice for inspection of my property from my regular appraisal agent and referencing the two accounts and 15.7 acres. *See* Exhibit 14. On February 15, 2018, I submitted my paperwork to run for City Counsil. Then, on May 1st, I won the election. *See id.*

8.  Then in May of 2018, I received multiple notices of appraised value from the Austin County Appraisal District (ACAD) for my property instead of the two notices I had received in prior years. I contacted ACAD to find out why I had been sent multiple notices with multiple account numbers in my name. The ACAD staff informed me that my property had been reviewed by the chief appraiser, Carmen Ottmer, and that she had determined that I did not own portions of my property. The ACAD staff said as a result, my property had been divided into multiple accounts to represent the divided property rather than the single farm property it had been since at least 1918 when the Robersons' and Magruder sold the large tract of 26 lots and lot 144 to Clinton Fort. I was surprised by the appraisal districts "takings" action and was not sure what to do. I didn't understand how an appraisal district had the authority to unilaterally rule on the ownership of my property without any due process. I understood that they were a taxing entity, not a court with jurisdiction regarding my purchases. The ACAD staff informed me that if I didn't agree with their action, I would need to file a property tax protest. Since the deadline for the tax protest period had expired, I was told I wouldn't be able to protest the decision until the following year. There is an email from Susan Rosinski to Barbra Lunsford on August 9, 2019 discussing the protest. *See* Exhibit 2, pg. 1.

9.  I filed a protest in 2019 and attended the scheduled appraisal review board hearing. The appraisal district staff informed the Appraisal Review Board (ARB) that I didn't own the paper roads described in my property survey or metes and bounds, and that this had been confirmed with the Town of San Felipe, the benefactor of the appraisal district action. The ARB ruled in favor of the ACAD and said they were not able to help me. *See* Exhibit 2, pg 86.

10. In November of 2020 (during the covid shut down where ACAD staff accessibility was limited), I met with the new Chief Appraiser, Gregg Cook, and reviewed with him the actions taken by the previous chief appraiser. I informed Mr. Cook that the appraisal district had taken actions that I believed were inappropriate and unlawful. I explained that the appraisal district made these decisions without asking me any questions or informing me of their sudden concerns with my property. I explained to him that I had chain of title research and documentation from 1839 to present day, which included a "quit claim" for the property lots and appurtenances from the Town Council to a previous property owner, Ida Louis Fort, et al (1957). I informed him that I believed my property was "targeted" by certain individuals within the Town of San Felipe and the Appraisal District. I requested that he correct the record and recombine my property into the two original property accounts. He asked me to send a copy of the "quit claim" and said he would correct the record. He also informed me that he had hired the previous chief appraiser, Carmen Ottmer, and she was now working for him "to clean up the Town of San Felipe" with the numerous "zero lots".

11. I formally requested in writing to Chief Appraiser Greg Cook on December 2, 2021, that I be provided with the evidence the appraisal district reportedly has proving I do not own all my property. I have not received any evidence from the appraisal district proving I don't own the roads within my property. *See* Exhibit 2.

12. I was informed by Barbara Lunsford with ACAD in her email dated January 10, 2022, that the ACAD attorney said, "We have reviewed the deeds that were provided and cannot conclude that the roads were included in any conveyance". I responded with additional information and was told by Ms. Lunsford that the ACAD had determined that I did not own the paper roads while referencing partial information in the 1957 resolution and two successive quitclaims, including the metes and bounds and survey outlining the roads which were included in the two tracts of land purchased from the Brenner's in 2006. *See* Exhibit 2.

13. I sent FOIAs to the City in March of 2018, May of 2018, and March 2019, the communications and documents I received are reflected in Exhibits 13. In 2022, following the ACAD attorney's responses, I began research into property tax code, transportation code, and administrative code to educate myself on the various processes and the role and responsibilities of tax assessors in the state of Texas.

14. In 2022, I filed a complaint with the Texas Department of Licensing and Regulation (TDLR) against Chief Appraiser Greg Cook. My complaint centers around the inequitable treatment and taxation in the appraisal district's actions in declaring I do not own portions of my property. The case (Case # PTP20220006386) is ongoing in review by the TDLR prosecutor. I believe ACAD staff continue to act outside their authority. Since filing of the complaint, Chief Appraiser Greg Cook has informed me that the Town of San Felipe will be remapped because the district has "exposure" to a lawsuit and that my neighbors will probably be upset with me. *See* Exhibit 2.

15. In May of 2022, I again requested a review of my property with the appraisal district as a protest to the taxable valuation statements I received for portions of my property. The appraisal staff did not meet with me, but instead referred me directly to the ARB. This meeting was in September of 2022, and I was informed the review board would only discuss market valuation, not my ongoing issues of due process violations. I was referred to civil litigation as my only remaining course of action. On September 7, 2022, a Notice of Issuance of Order was sent from the Austin County Appraisal Review Board signed by David Franklin, ARB Secretary. *See* pg. 86 of Exhibit 2. Franklin sat in on this ARB hearing but recused himself since he was related to my issue.

16. When all of this happened, I began to research the history of the roads and compile evidence regarding my ownership.[1] In the late 1930's, the Town of San Felipe filed suit against the County for beginning construction of a road within the town's jurisdiction without its approval. The County claimed the Town was not operational and they had the right to build the road. A

---

[1] *See* Exhibits 1-15; https://www.tshaonline.org/handbook/entries/san-felipe-de-austin-tx; https://www.thc.texas.gov/historic-sites/san-felipe-de-austin-state-historic-site/san-felipe-de-austin-histor; http://www.townofsanfelipe.net/History.htm; https://npgallery.nps.gov/GetAsset/7f404f2a-5d4d-4e9c-8856-7ac3d41692f5; https://www.thc.texas.gov/public/upload/preserve/national_register/final/San_Felipe_NR.pdf

Supreme Court decision determined that the Town had the authority to control its roads. *See* Exhibit 8, In the matter of discontinued road improvement work, 1939.

17. In December of 1939, a map of the town city limits was created to show the incorporated city limits and the current roads as they existed. *See* Exhibit 9, SF City Limits Survey. There are no roads shown within my property.

18. In 1940, with the Town unable to afford the maintenance and upkeep the roads, bridges, and alleys, passed a Resolution giving Austin County full authority and control of all roads, bridges, alleys within the town city limits. *See* Exhibit 6, 1940 Resolution.

19. In June of 1940, the County demonstrated its full control of the streets when it returned control of certain streets to San Felipe. They did this so the Town could transfer ownership of certain roads within the area being dedicated to the State for a State Park. *See* Exhibit 10, 1940 County controls roads.

20. In December of 1948, the Texas Attorney General provided Opinion V-730 to Austin County Commissioners Court found that no entire first- or second-class road shall be discontinued except upon vacation or non-use for a period of 3 years and it has the authority to assume control of and maintain roads, streets, and alleys of an unincorporated town which are a part of the County Road System. The AG found that Austin County, through its Commissioners Court, has authority to assume control of and maintain roads, streets, and alleys of an unincorporated town. In the opinion it states; Said court shall assume and have control of the streets and alleys in all cities and incorporated towns in Texas which have no de facto municipal government in active discharge of their duties. *See* Exhibit 11, Texas Attorney General Opinion V.730.

21. In 1957, the town provided 2 quitclaim deeds to the property owner "quitting" any claim they "might" have to all the lots and appurtenances. *See* Exhibit 2, pg. 12-26. Additionally there is the San Felipe de Austin Corporation Resolution and the two quitclaim Deeds for the property of Ida Louise Fort, et al (as conveyed to Clinton Fort, deceased), as in-the-control of Kathryn and Fay Roberson since 1901 and conveyed to Clinton Fort in 1918 with the second Quit Claim Deed which added the word "appurtenances" and issued on the same date in 1957 and sold to Dewey Walden two days later. I believe this shows they were clarifying the old roads as part of the property and shows how the homestead lots are not listed. *See* Exhibit 2, pgs. 12-26, & pgs. 76-106 of Exhibit 3.

22. Strips and Gore Doctrine – in 1957, the Town of San Felipe in providing a quitclaim to Fort, et al, adding the word "appurtenances" to the 2nd quitclaim to the property which had been fenced-in since 1918, did not expressly exclude the abandoned streets in the quitclaim; the Strips and Gore Doctrine describes the requirement of the grantor to expressly reserve exceptions to conveyance in a deed. Strips and Gore Doctrine describes that land which would have no use for the grantor for adjacent strips or gores due to lack of practical value; in addition, the deeds listed below conveyed the fenced-in property without expressed exceptions:
   Roberson to Fort (1918), Fort, et al to Walden (1957), Walden to Dazeys (1964), Wood/Kay/Roberson/Estlinbaum to Walden (1964), Dazeys to Brenners (1966), and with my purchase from Mr. Brenner in 2006, or The Hodos in 2008 or Ms. Hill in 2019; this is important

to note as 1918 is the first time the property is conveyed in-aggregate in what would become Mr. Brenner's large holding of 27 lots, fenced-in with parts of Third St., Fourth St., Baron de Bastrop, and Guadalupe St. along with the additional 6 lots and 3 lots from The Hodos and Ms. Hill respectively; these three purchases constitute the contiguous property purchased since 2006 and which the Austin County Appraisal District and the Town of San Felipe state I do not own in total. *See* Exhibit 3 & 4.

The information provided includes the deeds, single-survey, metes and bounds, conventional loan title policy (see Schedules A and B (Inclusions of and Exceptions from Coverage) plus, the sale contract where Mr. Brenner requested the right to access the property he continued to hold on F.M. 1458 (for access to his cattle grazing and hay storage), through the closed road and gated, Guadalupe Victoria (Guadalupe) Street as it intersected 5th Street in the original, platted colonial map from 1823 (see Hill Property Survey by Precision Surveyors, December 11, 2019 for reference to "closed street"). *See* Exhibit 3 & 4. and *Strayhorn v. Jones*, 157 Tex. 136, 158, 300 S.W.2d 623, 638 (1957).

23.   The colonial-era roads have not been used as actual roads for at least 50 years and are non-existent. *See* Exhibit 1 & 3-13. For at least the past 80 years the property has been fenced in and used for agricultural purposes. Additionally, as discussed above, the San Felipe de Austin Corporation ("SFDAC") relinquished control of all roads within my property to Austin County Commissioners Court in 1940. *See* Exhibit 1 & 5-11. No visible evidence of the colonial roads remains. *See* Exhibit 4. Clearly, the roads on my property meet the criteria for common-law abandonment, thus voiding any alleged right the city might have to divide and claim ownership of any of my property. *See* Exhibit 1 & 3-13.

24.   Furthermore, the town of San Felipe has issued quitclaim deeds for other neighboring properties in the area that include the colonial era roads, containing the "rights and appurtenances" language, or explicitly mentioning the roads, some for $10, one for $1,924.00, and another for $37,000.00. *See* Exhibit 1-3, & 12. I have been paying taxes on these roads the same as my neighbors. Yet, none of the other property owners "do not own the roads" and have been subject to the same discriminatory behavior as experienced by me. *Id*. I have the same type of streets and have been paying taxes like my neighbors, and I am the only one who the Town and District is claiming does not own the streets and requiring splitting of plats. *Id*.

25.   I have personal knowledge of these events and compiled these documents through my own records, ACAD records, and Town records.

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

Executed on December 20, 2023

*Kent McAllister* (signature)
Kent McAllister